UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— X

IN RE CABRINI MEDICAL CENTER,
Debtor.

———————————————————— X

This Document Relates to:

———————————————————— X

MANNUCCIO MANNUCCI, GUIDO
PADULA, DILVA SALVIONI, AND
ANGELO TARANTA,

        Plaintiffs - Appellants,

  - against -

CABRINI MEDICAL CENTER, et al.,

        Defendants - Appellees.

———————————————————— X

**OPINION AND ORDER**

Chapter 11
No. 09-14398 (AJG)

Adversary Proceeding
No. 11-02407 (ALG)

12 Civ. 6661 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.   INTRODUCTION

      Three doctors – Mannuccio Mannucci, Angelo Taranta, and Guido

Padula – as well as Dilva Salvioni, the widow of a fourth doctor, Daniele Salvioni

("Appellants") appeal a Bankruptcy Court decision refusing to lift the automatic

1

stay instituted by the bankruptcy proceedings of Cabrini Medical Center

("Cabrini").  Appellants allege that Cabrini is an alter-ego of the Missionary Sisters

of the Sacred Heart of Jesus ("Missionary Sisters"), and seek to lift the stay so that

they may add Cabrini as a nominal defendant in a state court action against

Missionary Sisters.[1]

## II.    BACKGROUND[2]

### A.    The State Court Complaints

Cabrini is a domestic not-for-profit corporation organized under the

laws of New York that operated a hospital in New York but in March 2008 ceased

---

[1]    A refusal to lift the automatic stay by the bankruptcy court is a final, appealable order under the law of this Circuit.  *See In re Megan-Racine Assoc., Inc.*, 102 F.3d 671, 675 (2d Cir. 1996).  As such, this Court has jurisdiction over this appeal of the bankruptcy court's refusal to lift the stay pursuant to 28 U.S.C. § 158(a)(1) and Fed. R. Bankr. P. 8001(a).

[2]    The facts below are drawn from: (1) the parties' briefs (Appellant Brief ("Appellant Br."); Joint Brief in Opposition to Appeals from Decision of the Bankruptcy Court Denying Renewed Motion for Relief from the Automatic Stay ("Appellee Br."); and Appellants' Reply Brief in Further Support of the Appeal ("Reply Br.")); and (2) the record on appeal as designated pursuant to Federal Rule of Bankruptcy Procedure 8006 (including Appellants' Designation of Record and Statement of Issues on Appeal ("Record"), and the Joint Designation of Additional Items for Inclusion in the Record on Appeal by Appellees ("Supp. Record")).  Citations to items that appear only on the docket of the Bankruptcy Court are abbreviated with the notation "Bankr. Dkt. No." followed by the relevant number.  The facts necessary for this appeal are not in dispute.

hospital operations.[3]  Mannucci, Padula, Salvioni and Taranta worked for Cabrini

until retiring in 2000, 1980, 1980, and 1995 respectively.[4]  Between 1967 and

1978, Cabrini set up Deferred Compensation Plans (the "Plans") for each of the

Doctors.[5]  None of the Plans had trustees.[6]  Cabrini deposited the monies subject to

the Plans into a variety of brokerage accounts.[7]  In 1997, citing a tax problem,

Cabrini transferred the funds from these accounts into four accounts with Merrill

Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch").[8]  On November 16, 2006,

Cabrini's then-president and CEO Robert Chaloner sent a letter to the doctors

informing them that, as part of a "major restructuring project[,]" their money

would be "temporarily" moved.[9]  Between 2006 and 2007, Cabrini transferred the

funds from the Merrill Lunch accounts (totaling roughly $2.9 million dollars) into

---

[3]      *See* 09/07/09 Affidavit of Diane Kniejski (Chief Operating Officer of Cabrini Medical Center) Pursuant to Local Bankruptcy Rule 1007-2 and in Support of Chapter 11 Petition, Record No. 2, ¶¶ 4, 13, 78.

[4]      *See* State Court Complaint, Record Ex. A., ¶¶ 8-11.

[5]      *See* Joint Stipulated Statement of Undisputed Material Facts ("Sum. J. Statement"), Record No. 34, ¶ 5.

[6]      *See id.* ¶ 33.

[7]      *See id.* ¶ 34.

[8]      *See id.* ¶ 37.

[9]      *Id.* ¶ 57.

its general operating account.[10]  Not surprisingly, Cabrini did not have the doctors'

authorization to make these transfers.[11]

On August 6, 2008, the Appellants commenced an action in the

Supreme Court of the State of New York, New York County, against Cabrini,

Missionary Sisters, and Merrill Lynch, seeking to recover the funds allegedly

looted from the Plans.[12]  The complaint alleged that the Plans were qualified

ERISA plans, and that the defendants were liable under ERISA and a variety of

New York common law theories.[13]  The complaint further alleged that Cabrini was

dominated, controlled, and ultimately looted by Missionary Sisters.[14]

After the Chapter 11 proceedings and the automatic stay (discussed

below) were instituted, the state court action was dismissed with leave to re-plead

and, on March 1, 2010, the Appellants filed an amended complaint, which was

---

[10]     *See id*. ¶¶ 54; 62.

[11]     *See id*. ¶ 56.

[12]     *See* State Court Complaint, Record Ex. A.

[13]     *See id*. ¶ 1.

[14]     *See, e.g., id*. ¶ 15 ("On information and belief, the Missionary Sisters have lent millions of dollars to Cabrini, have purchased Cabrini assets at below-market rates and have exerted de facto control over Cabrini's financial affairs.").

4

substantially identical to the earlier complaint but dropped Cabrini as a defendant.[15] Missionary Sisters moved to dismiss on the basis that Cabrini was a necessary party not named in the complaint, and their motion was granted on January 5, 2011, and affirmed on appeal on April 5, 2012.[16]

### B.    The Bankruptcy Proceedings

On July 9, 2009, Cabrini filed for bankruptcy under Chapter 11.[17]  At the petition date, Cabrini had only two hundred thousand dollars cash on hand. The Bankruptcy Court therefore approved debtor-in-possession ("DIP") financing in an Interim Order dated July 30, 2009.[18]  Under this Order, the Illinois Missionary Sisters, the largest secured creditor of Cabrini and an Illinois arm of the Missionary Sisters, provided DIP financing in return for Cabrini's agreement not to

---

[15]     *See* Appellants' Amended Complaint and Exhibits, filed in Supreme Court of the State of New York, New York County, on March 1, 2010 (Case No. 602284/2008), Record Ex. B.

[16]     *See* Supreme Court of the State of New York, New York County, Amended Decision and Order of the Honorable Eileen Bransten on Motion to Dismiss, dated January 4, 2011, with Notice of Entry. (Case No. 602284/2008), Record Ex. N; Order of the Supreme Court of the State of New York, Appellate Division - First Department, affirming the January 4, 2011, Supreme Court of the State of New York, New York County, Amended Decision and Order, dated April 5, 2012, with Notice of Entry. (Case No. 602284/2008), Record Ex. 51.

[17]     *See* Sum J. Statement, Record No. 34, ¶ 67.

[18]     *See id*. ¶¶ 67-68.

5

challenge the liens of the Missionary Sisters or otherwise assert any claims against

them.[19]  However, the Creditors' Committee and other parties in interest were

given standing and authority for ninety days to challenge the liens or otherwise

bring claims against the Missionary Sisters.[20]

Appellants did not file a complaint during this ninety day window.

The Creditors' Committee, though, filed a complaint against Missionary Sisters in

the Bankruptcy Court on October 28, 2009, seeking to set aside and/or subordinate

various claims of the Missionary Sisters.[21]  Like the amended state court complaint

that would be filed later, the Committee's complaint alleged that the Missionary

Sisters had dominated, controlled, and extracted resources from Cabrini.[22]

---

[19]     *See* Interim Order (I) Authorizing Debtor to Obtain Postpetition
Financing Pursuant to 11 U.S.C. §§ 364(c) and 364(d); (II) Authorizing the Use of
Cash Collateral Pursuant to 11 U.S.C. § 363; (III) Granting Liens and Super-
Priority Claims; (IV) Granting Adequate Protection to the Secured Parties Pursuant
to 11 U.S.C. §§ 361, 362, 363 and 364; and (V) Scheduling a Final Hearing,
Bankr. Dkt. No. 66, at 17.

[20]     *See id*.

[21]     *See* Complaint by Official Committee of Unsecured Creditors against
MSSH-NY and Missionary Sisters of the Sacred Heart, a not-for-profit corporation
organized under the laws of Illinois ("MSSH-IL") dated October 28, 2009 ("Cred.
Compl."), Supp. Record No. 1.

[22]     *See*, *e.g., id*. ¶¶ 169 (alleging that "At all relevant times, MSSH-NY
was an insider of CMC, its officers were CMC's ex-officio members and it
effectively appointed the board of trustees or were ex-officio trustees."); 176
("Upon information and belief, at all relevant times the Defendant effectively

On November 19, 2009, the doctors each filed proof of claims in the bankruptcy case reflecting the monies they asserted they were owed under the Plans.[23]  The doctors did not check any of the boxes that would have indicated that their claims were secured or otherwise entitled to priority over general unsecured claims.[24]  After an auction process, on February 11, 2010, the Bankruptcy Court approved the sale of Cabrini's assets – mostly real-estate – for $83.1 million dollars.[25]  Subsequently, the Creditors' Committee's adversary proceeding settled, and, after the relevant parties were noticed, the settlement (the "Settlement") was approved – without any objection by Appellants – on November 19, 2010.[26]

Through the Settlement Agreement, the Missionary Sisters renounced a portion of their secured claims for the benefit of the unsecured creditor class, and in exchange received a release from all claims against it by Cabrini, its estate, or the Creditors' Committee.[27]  The Settlement also included an injunction (the "Plan

---

controlled [Cabrini] and used this control to its advantage.").

[23]     *See* Sum J. Statement, Record No. 34, ¶ 70.

[24]     *See id*. ¶ 72.

[25]     *See id*. ¶ 74.  The sale was to a party not involved in these proceedings.  *See id*.

[26]     *See* Sum J. Statement, Record No. 34, ¶¶ 75-78.

[27]     *See* Motion Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure for an Order Approving Settlement of Claims by and Between the

Injunction") that would prevent any creditor who received a distribution under a plan of reorganization "from pursuing claims against [the Missionary Sisters] that arise out of the creditors' dealings with the debtor."[28]

With all loose ends seemingly tied up, Cabrini and the Creditors' Committee filed a joint plan of reorganization, incorporating the Settlement, and sought approval of a disclosure statement on December 22, 2010.[29] On January 19, 2011, the Appellants timely objected to the disclosure statement, seeking full disclosure of their claims and alleging that: (1) the funds taken from the Plans should be excluded from the estate, under either an ERISA or trust theory; and (2) the Bankruptcy Court was not justified in issuing the Plan Injunction against them.[30] Cabrini then modified the plan and the disclosure statement to fully

---

Official Committee of Unsecured Creditors of Cabrini Medical Center, Cabrini Medical Center, Missionary Sisters of the Sacred Heart, Illinois and Missionary Sisters of the Sacred Heart, New York ("Settlement"), Supp. Record No. 7, ¶ 17(i).

[28]    *See id.* ¶ 17(g).

[29]    *See* Disclosure Statement, Bankr. Dkt. No. 502; Ex Parte Motion of the Debtors for Entry of an Order Pursuant to Federal Rules of Bankruptcy Procedure 2002(b) and (m), 3017(a) and 9007 (A) Scheduling a Disclosure Statement Hearing, (B) Approving Form and Manner of Notice and (C) Establishing a Deadline for Objections and Modifications to the Proposed Disclosure Statement, Bankr. Dkt. No. 503.

[30]    *See* Objection of Mannucio Mannuci, Angelo Taranta, Guido Padula and Dilva Salvioni to the Debtor's Proposed Disclosure Statement, Bankr. Dkt. No. 541, ¶¶ 34-52.

disclose the Appellants' reservations, and on January 26, 2011, the Bankruptcy Court entered an Order approving the First Amended Disclosure Statement.[31]

That same day – twenty-one days after their state court action had been dismissed – the Appellants moved the Bankruptcy Court to lift the automatic stay to allow them to add Cabrini as a defendant in the state court action.[32] However, on February 4, 2011, Cabrini filed a motion in the Bankruptcy Court to fix the amounts of the Appellants claims and classify them as general unsecured claims, and in a hearing on March 23, 2011 the Bankruptcy Court decided to hold Appellants' motion to lift the stay in abeyance pending resolution of Cabrini's motion.[33]

On March 30, 2011, the plan confirmation hearing went forward, opposed only by Appellants.[34]  After negotiations between the parties over the scope of the Plan Injunction, the Court entered a Confirmation Order on April 13, 2011.[35]  This Order enjoined those who held claims against Cabrini from

---

[31]     *See* Appellant Br. at 5.

[32]     *See* Appellants' Motion for Relief for Automatic Stay, Record No. 18.

[33]     *See* Appellant Br. at 5-6.

[34]     *See* Appellants' Objection to Confirmation of Debtor's First Amended Chapter 11 Plan of Liquidation of Cabrini Medical Center, Record No. 26.

[35]     *See* Order Confirming First Amended Chapter 11 Plan of Liquidation of Cabrini Medical Center, Record No. 28.

"commencing or continuing in any manner any action or other proceeding with respect to a claim against the debtor or based upon a theory which arises out of such holder's Claim against the Debtor."[36]  The Order further states that "the injunction precludes only those causes of action that were either (a) created by virtue of the filing of the bankruptcy or (b) that are otherwise property of the Estate, including derivative actions."[37]

## C.    The Bankruptcy Court Decisions

Thereafter, the parties initiated respective adversary proceedings over control of the funds, which were subsequently procedurally consolidated, and each side moved for summary judgment.[38]  In its opinion (the "Summary Judgment Opinion"), the Bankruptcy Court held that, because the funds from the Plans had been commingled with general funds and could not be traced, the Appellants' claims would be allowed as general unsecured claims, not excluded from the estate.[39]

---

[36]     *Id.* ¶ 19.

[37]     *Id.*

[38]     *See In re Cabrini Med. Ctr.*, No. 09–14398, 2012 WL 527711, at *1 (Bankr. S.D.N.Y. Feb. 16, 2012).

[39]     *See id.* at *8 ("Therefore, because the funds were commingled and the tracing requirement is not met, summary judgment is granted to Cabrini and each of the doctors' claims is allowed as an unsecured claim.").

An appeal of the Summary Judgment Opinion was taken and heard by the Honorable Lewis A. Kaplan.[40]  One of the issues designated for appeal was whether the Bankruptcy Court erred by not deciding who owned the funds.[41]  On October 9, 2012, Judge Kaplan heard oral arguments and issued a bench ruling affirming the Summary Judgment Opinion.[42]  In his bench ruling, Judge Kaplan found that the Appellants never had a *proprietary* interest in the brokerage accounts maintained by Cabrini in connection with the Plans.  Instead, Cabrini had a *contractual* obligation under the Plans to pay Appellants, upon their respective retirement dates, a sum of money equal to the amount of money in the brokerage accounts.[43]  Judge Kaplan further found that it would be legally impermissible to impose a constructive trust on Cabrini for these monies because, *inter alia*, the funds Appellants were contractually entitled to did not form an identifiable *res*, had

---

[40]     *See* Appellant Br. at 7.

[41]     *See id*. at 14.

[42]     *See* 10/09/12 Argument on Appeal, Mannucci v. Cabrini Med. Ctr., No. 12 Civ. 3211 (LAK) (S.D.N.Y.) (Docket No. 14).

[43]     *See, e.g. id*. at15:1-7 ("THE COURT: I thought you agreed with me a few minutes ago that the property in the Merrill Lynch accounts was owned beneficially and of record by the hospital, that the doctors had no rights in that property in and of itself, and what they had was a contractual right to have the hospital pay them either a lump sum or on an installment basis out of whatever property the hospital chose to pay it out of.").

11

been commingled with the general funds of Cabrini and then dissipated, and could not be traced.[44]  That same day, the Clerk of Court entered an order stating that the District Court had affirmed the Bankruptcy Court "substantially for the reasons [set forth] in the Bankruptcy Court's opinion, as well as those given by this Court today."[45]  Judge Kaplan's order is currently on appeal to the Second Circuit.[46]

On March 14, 2012, after the Appellate Division affirmed the dismissal of their state court complaint, the Appellants renewed their motion to lift the stay.[47]  In connection with this motion, Appellants alleged that they sought to add Cabrini to the state court complaint merely to comply with New York's pleading rules, and that they would not seek a monetary judgment against Cabrini.[48]  Cabrini responded that it would not oppose the motion to lift the stay, if the lift-stay order: (1) prohibited Appellants from seeking any judgment in state court that changed or modified the Summary Judgment Opinion; (2) prohibited

---

[44]    *See id.* at 13:15-14:23.

[45]    10/9/12 Judgment, *Mannucci v. Cabrini Med. Ctr.*, No. 12 Civ. 3211 (LAK) (S.D.N.Y.) (Docket No. 13).

[46]    *See* 11/08/12 Notice of Appeal, *Mannucci v. Cabrini Med. Ctr.*, No. 12 Civ. 3211 (LAK) (S.D.N.Y.) (Docket No. 17).

[47]    *See* Appellants' Renewed Motion for Relief from Stay, Record No. 50.

[48]    *See id.* ¶ 29.

Appellants from seeking a monetary judgment against Cabrini; and (3) limited Appellants to naming Cabrini as a nominal party.[49]

The New York arm of the Missionary Sisters opposed the motion, arguing that: (1) any action against them or Cabrini would violate the Plan Injunction and/or the Settlement; (2) lifting the stay could lead to a ruling inconsistent with the pending appellate review of the Summary Judgment Opinion if the question of the ownership of the funds were raised in state court; and (3) the Missionary Sisters would be prejudiced by the state court action, because Cabrini would have to be found primarily liable to find the Missionary Sisters liable as an alter-ego, but Cabrini did not have any incentive to defend the action.[50]

In his opinion, Bankruptcy Judge Allan Gropper held that: (1) the Appellants' claims against the Missionary Sisters were generalized, not specific to the Appellants, and as such belonged to the estate; (2) these generalized claims had not been abandoned to the Appellants, but rather settled and released; and (3) in any event, the Bankruptcy Court was without jurisdiction to lift the stay, because the issue of the ownership of the funds was a subject of the Summary Judgment

---

[49]     *See* Debtors' Limited Objection to the Mannucci Parties' Renewed Motion for Relief from the Automatic Stay dated April 4, 2012, Supp. Record No. 34, at 5-6.

[50]     *See In re Cabrini Medical Center*, No. 09–14398, 2012 WL 2254386, at *6 (Bankr. S.D.N.Y. June 15, 2012).

appeal and might be implicated by the state court action.[51]  An Order effectuating

Judge Gropper's opinion was then entered,[52] and this timely appeal followed.[53]

### D.    The Bases for This Appeal

Appellants designate two issues for this appeal:  (1) "[whether] the

Bankruptcy Court err[ed] when it refused to lift the stay despite Cabrini's consent

to lifting the stay and despite Appellants' representation that they were not seeking

damages from the bankrupt entity"; and (2) "[whether] the Bankruptcy Court

err[ed] when it held that Appellants . . . suffered no direct particularized harm by

virtue of [the Missionary Sisters'] domination and control of Cabrini . . . ."[54]

## III.   STANDARD OF REVIEW

A district court functions as an appellate court in reviewing judgments

---

[51]      *See id*. at *9-10.

[52]      *See* Order, denying Appellants' Renewed motion for Relief from
Automatic Stay, Record No. 58.

[53]      *See* Amended Notice of Appeal filed by Katherine B. Harrison on
behalf of Mannucio Mannucci, Supp. Record No. 40.

[54]      Designation of Record and Statement of Issues on Appeal, Record No.
61, at 2.

rendered by bankruptcy courts.[55]  Findings of fact are reviewed for clear error.[56]  A finding of fact is clearly erroneous if the court is "'left with the definite and firm conviction that a mistake has been committed.'"[57]  A bankruptcy court's conclusions of law, by contrast, are reviewed *de novo*.[58]

"The decision to lift an automatic stay is left to the discretion of the bankruptcy court . . . ."[59]  As such, "[t]he bankruptcy court's decision on a motion to lift the automatic stay is reviewable only for an abuse of discretion."[60]  A refusal to lift a plan injunction is also reviewed for abuse of discretion.[61]

---

[55]     *See In re Sanshoe Worldwide Corp.*, 993 F.2d 300, 305 (2d Cir. 1993) ("[Appellant] relies on several cases for the reasonable proposition that the district court acts as an appellate court in reviewing a bankruptcy court's judgments.").

[56]     *See* Fed. R. Bankr. P. 8013 ("Findings of fact . . . shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.").  *Accord In re Cody, Inc.*, 338 F.3d 89, 94 (2d Cir. 2003).

[57]     *In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1388 (2d Cir. 1990) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

[58]      *See In re Cody*, 338 F.3d at 94; *In re 139-141 Owners Corp.*, 313 B.R. 364, 367 (S.D.N.Y. 2004) (same).

[59]     *In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d 86, 91 (2d Cir. 2003) (citation omitted).

[60]     *In re Mazzeo*, 167 F.3d 139, 142 (2d Cir. 1999).

[61]     *See In re Worldcom, Inc.*, No. 05 Civ. 5704, 2006 WL 2270379, at *2 (S.D.N.Y. Aug. 4, 2006) ("The decision to grant or deny relief from the automatic

## IV.  APPLICABLE LAW

### A.  The Automatic Stay

Pursuant to 11 U.S.C. § 362(a)(1), the filing of a bankruptcy petition stays the commencement or continuation of judicial proceedings against the debtor. However, "Section 362 lists several circumstances in which the court 'shall grant relief from the stay . . . such as by terminating, annulling, modifying, or conditioning such stay.'"[62] Section 362 states that "[o]n request of a party in interest and after notice and a hearing, the [bankruptcy] court shall grant relief from the stay . . . for cause."[63]  The Code does not define what constitutes "cause" to lift the stay.  However, the Second Circuit has identified the following factors that weigh on whether the stay should be lifted:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum

------

stay or, by analogy, the Plan Injunction, is reviewed for abuse of discretion.") (citation omitted).

[62]  *In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d at 91 (quoting 11 U.S.C. § 362(d)).

[63]  11 U.S.C. § 362(d)(1).

16

would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.[64]

## B.    Veil-Piercing Claims in Bankruptcy

The filing of a bankruptcy petition creates a bankruptcy estate, encompassing "all legal or equitable interests of the debtor in property as of the commencement of the case,"[65] and including causes of action possessed by the debtor at the time of filing.[66] "Under the Bankruptcy Code the trustee stands in the shoes of the bankrupt corporation and has standing to bring any suit that the bankrupt corporation could have instituted had it not petitioned for bankruptcy."[67] Property interests in bankruptcy are created and defined by state law, unless federal law requires a different result.[68] In light of these principles, the question of

---

[64]     *In re Mazzeo*, 167 F.3d at 143 (quoting *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990)).

[65]     11 U.S.C. § 541(a)(1).

[66]     *See In re Jackson*, 593 F.3d 171, 176 (2d Cir. 2010) (citing *Seward v. Devine*, 888 F.2d 957, 963 (2d Cir. 1989)).

[67]     *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991).

[68]     *See Butner v. United States*, 440 U.S. 48, 55 (1979).

17

whether a veil-piercing claim is property of the estate – and therefore properly asserted by the trustee – is a matter determined by the source of law giving rise to the veil piercing claim.[69]

"Piercing the corporate veil is a narrow exception to the doctrine of limited liability for corporate entities, and . . . courts should permit veil-piercing only under 'extraordinary circumstances.'"[70]  Under New York law, "piercing the corporate veil does not constitute an independent cause of action . . . .  Instead, the alter ego doctrine is a theory of liability generally invoked to disregard the corporate entity to find the owners liable for the debts of the corporation."[71]  "A court may pierce the corporate veil and find an individual liable for the debts of the corporation 'where (1) the owner exercised complete domination over the corporation with respect to the transaction at issue, and (2) such domination was used to commit a fraud or wrong that injured the party seeking to pierce the

---

[69]    *See St. Paul Fire and Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 700 (2d Cir. 1989).

[70]    *In re Optimal U.S. Litig.*, No. 10 Civ. 4095, 2011 WL 4908745, at *3 (S.D.N.Y. Oct. 14, 2011) (quotation marks and citations omitted).

[71]    *First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*, No. 10–CV–696, 2012 WL 1711218, at *16 (E.D.N.Y. May 15, 2012) (quotation marks and citations omitted).  Subsequent references to "veil piercing claims" and "alter ego claims" are shorthand for independent claims that seek to use the equitable device of veil-piercing.

18

veil.'"[72]  "[U]nder New York law 'a [bankruptcy] trustee can bring an action

piercing the corporate veil . . . .'"[73]

There is some authority that federal common law determines whether

the corporate veil may be pierced in connection with an ERISA claim.[74]  "Piercing

the corporate veil is not itself an independent ERISA cause of action[,] but rather a

means of imposing liability on an underlying action."[75]  Courts weigh the

following factors in deciding whether to pierce the corporate veil in the context of

an ERISA action: "'(1) the absence of the formalities which are part and parcel of

normal corporate existence, i.e., the issuance of stock, the election of directors, the

keeping of corporate records, etc., (2) inadequate capitalization, (3) personal use of

---

[72]      *Finance One, Inc. v. Timeless Apparel, Inc.*, No. 09 Civ. 9397, 2011
WL 1345030, at *4 (S.D.N.Y. Mar. 29, 2011) (quoting *MAG Portfolio Consult,
GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 63 (2d Cir. 2001).

[73]      *Gruber v. Victor*, No. 95 Civ. 2285, 1996 WL 492991, at *10
(S.D.N.Y. Aug. 28, 1996) (quoting *Corcoran v. Hall*, 545 N.Y.S.2d 278 (1st Dep't
1989)).

[74]      *See Ferrara v. Oakfield Leasing Inc.*, — F. Supp. 2d —, No.
11–CV–408 , 2012 WL 5467519, at *17 (E.D.N.Y. Nov. 9, 2012) (collecting
cases).  *See also Leddy v. Standard Drywall, Inc.*, 875 F.2d 383, 388 (2d Cir. 1989)
("We therefore hold that at least to the extent that a controlling corporate official
defrauds or conspires to defraud a benefit fund of required contributions, the
official is individually liable under Section 502 of ERISA, 29 U.S.C. § 1132 . . .
even if the traditional conditions for piercing the corporate veil are not met.").

[75]      *Peacock v. Thomas*, 516 U.S. 349, 354 (1996).

corporate funds, and (4) the perpetration of fraud by means of the corporate vehicle.'"[76] The bankruptcy trustee may assert an ERISA claim seeking to pierce the corporate veil when the conditions described in the paragraph below are met.[77]

A creditor has standing to bring an alter-ego claim when the harm alleged in support of the claim is personal to them; a creditor lacks standing to bring such a claim when the harm alleged is general.[78] A claim is general "if [there is] . . . no particularized injury arising from it, and [it] could be brought by any creditor of the debtor . . . ."[79] A claim is personal to the creditor "[w]hen a third

---

[76]     *Hanley v. Giordano's Restaurant, Inc.*, No. 94 Civ. 4696, 1995 WL 442143, at *3 (S.D.N.Y. July 26, 1995) (quoting *Walter E. Heller & Co. v. Video Innovations, Inc.*, 730 F.2d 50, 53 (2d Cir. 1984)).

[77]     *See Labarbera v. United Crane and Rigging Svcs., Inc.*, Nos. 08–CV–3274, 08–CV–3983, 2011 WL 1303146, at *5-6  (E.D.N.Y. Mar. 2, 2011).

[78]     *See St. Paul Fire and Marine Ins. Co.*, 884 F.2d at 704 ("If, however, the cause of action is a general one, and does not accrue to [the creditor] individually, [then the creditor] cannot seek individual relief outside of the bankruptcy court."). *Accord Picard v. JPMorgan Chase & Co.*, 460 B.R. 84, 96 (S.D.N.Y. 2011) (quoting *Koch Refining v. Farmers Union Cent. Exchange, Inc.*, 831 F.2d 1339, 1349 (7th Cir. 1987) ("'To determine whether an action accrues individually to a claimant or generally to the corporation, a court must look to the injury for which relief is sought and consider whether it is peculiar and personal to the claimant or general and common to the corporation and creditors.'").

[79]     *St. Paul Fire and Marine Ins. Co.*, 884 F.2d at 701.  *Accord Kalb, Voorhis & Co. v. American Financial Corp.*,  8 F.3d 130, 132 (2d Cir. 1993) ("Property of the estate does not belong to any individual creditor. If under governing state law the debtor could have asserted an alter ego claim to pierce its own corporate veil, that claim constitutes property of the bankrupt estate and can

party has injured not the bankrupt corporation itself but a creditor of that corporation . . . ."[80]

## V.  DISCUSSION

### A.  The Bankruptcy Court Had Jurisdiction to Lift the Stay

I must first address the Bankruptcy Court's determination that it lacked jurisdiction to lift the stay because the subsequent state court action might lead to a ruling inconsistent with that of the District Court considering the Summary Judgment appeal.[81]  I review this determination of law *de novo*.  If this jurisdictional determination is correct, then the remainder of the Opinion would be merely dicta.[82]

A federal court may exercise jurisdiction only if so authorized by the

_____

only be asserted by the trustee or the debtor-in-possession.").

[80]    *Picard*, 460 B.R. at 9 (quoting *Steinberg v. Buczynski*, 40 F.3d 890, 892–93 (7th Cir. 1994)).

[81]    *See  In re Cabrini Med. Ctr.*, 2012 WL 2254386, at *10 ("If the state-court action were to proceed against the debtor, it could lead to inconsistent rulings on [the] issue [of the ownership of the funds], and the Court is without jurisdiction to allow such a result.").

[82]    *See, e.g., Young-Gibson v. Patel,* 476 Fed. App'x 482, 483 (2d Cir. 2012) ("subject matter jurisdiction is a threshold question that must be resolved . . . before proceeding to the merits").

21

Constitution and by statute.[83]  The Constitution extends the federal judicial power

to, *inter alia*, all cases arising under the Constitution, laws, and treaties of the

United States.[84]  Pursuant to 28 U.S.C. § 1334, district courts "have original and

exclusive jurisdiction of all cases under title 11,"[85] "exclusive jurisdiction . . . of

property of the estate[],"[86] and "original but not exclusive jurisdiction of all civil

proceedings arising under title 11, or arising in or related to cases under title 11."[87]

Under the authority granted by 28 U.S.C. § 157(a), the District Court for the

Southern District of New York has referred all title 11 cases to the Bankruptcy

Court for the Southern District of New York.[88]

---

[83]     *See* U.S. Const. art. III, § 1 ("The judicial Power of the United States shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish.").  *See also Exxon Mobil Corp. v. Allapattah Servs., Inc.* 545 U.S. 546, 552 (2005) ("The district courts of the United States, as we have said many times, are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute." (quotation marks and citation omitted)).

[84]     *See* U.S. Const. art. III, § 2.

[85]     28 U.S.C. § 1334(a).

[86]     *Id.* § 1334(e).  *Accord Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 447 (2004) ("Bankruptcy courts have exclusive jurisdiction over a debtor's property, wherever located, and over the estate.").

[87]     *Id.* § 1334(b).

[88]     *See In re Standing Order of Reference Re: Title 11*, No. 12–M–32 (S.D.N.Y. Jan. 31, 2012).

22

Bankruptcy judges lack the guaranteed salary and life-tenure of Article III judges,[89] and bankruptcy courts are Article I courts, not Article III courts.[90]  Pursuant to 28 U.S.C. § 157(b)(1), a bankruptcy judge to whom a case has been referred may enter a final order on "all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11."  However, as legislative courts, bankruptcy courts lack constitutional authority to enter final judgments on common law claims that are independent of the federal bankruptcy laws, even if such claims constitute "core proceedings" under Section 157.[91]  A

---

[89]    *See* U.S. Const. art. III, § 1.

[90]    *See Celotex Corp. v. Edwards*, 514 U.S. 300, 320 (1995) (Stevens, J., dissenting) ("The [1978 Bankruptcy Reform Act] did not, however, make the newly empowered bankruptcy judges Article III judges. In particular, it denied bankruptcy judges the life tenure and salary protection that the Constitution requires for Article III judges.").  *See also Thomas v. Union Carbide Agr. Prods. Co.*, 473 U.S. 568, 583 (1985) ("the Court has long recognized that Congress is not barred from acting pursuant to its powers under Article I to vest decisionmaking authority in tribunals that lack the attributes of Article III courts.").

[91]    *See Stern v. Marshall*, — U.S. —, 131 S. Ct. 2594, 2620 (2011) ("Article III of the Constitution provides that the judicial power of the United States may be vested only in courts whose judges enjoy the protections set forth in that Article. . . . The Bankruptcy Court below lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim").  *Cf. In re Quigley Co., Inc.*, 676 F.3d 45, 52 (2d Cir. 2012) (noting that the holding of *Stern* was narrow, and that "[e]njoining litigation to protect bankruptcy estates during the pendency of bankruptcy proceedings, unlike the entry of the final tort judgment at issue in *Stern*, has historically been the province of the bankruptcy courts.") (citation omitted).

notice of appeal deprives the bankruptcy court of jurisdiction to alter any portion of the order that formed the basis for the appeal, although it does not deprive the bankruptcy court of the authority to enforce that order.[92]

State courts have concurrent jurisdiction with federal courts over matters of federal law unless federal or state law divests them of such jurisdiction.[93]   And it should be uncontroversial that state courts have jurisdiction over matters of state law, while federal district courts only have such jurisdiction if authorized by the Constitution and by statute.  The Supreme Court of the United States is the only federal court with appellate jurisdiction over the final judgment of a state court.[94]  As a consequence of this scheme, parallel state and federal court proceedings are not uncommon.  If the state court action is reduced to judgment

---

[92]     *See In re Prudential Lines, Inc.*, 170 B.R. 222, 243 (S.D.N.Y. 1994). *Cf. Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance – it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.").

[93]     *See Mims v. Arrow Fin. Svcs., LLC*, 132 S. Ct. 740, 748 (2012) ("In cases arising under federal law, we note, there is a deeply rooted presumption in favor of concurrent state court jurisdiction, rebuttable if Congress affirmatively ousts the state courts of jurisdiction over a particular federal claim.").

[94]     *See* 28 U.S.C. § 1257.  *See also District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983) ("[A] United States District Court has no authority to review final judgments of a state court in judicial proceedings.").

24

first, its judgment is accorded full faith and credit in federal courts.[95]  Neither the

Full Faith and Credit Clause of the Constitution nor the Full Faith and Credit

statute govern the res judicata effects of a federal court judgment in state court.

However, the Supreme Court has held that a federal judgment in a federal question

case is to be given the same claim preclusive effect that it would have under federal

law, and that a federal judgment in a diversity case is to be given the same claim

preclusive effect that it would have under the law of the state in which the federal

diversity court sits.[96]  In short, the prospect of parallel state and federal proceedings

does not raise jurisdictional issues, although such proceedings implicate certain

prudential doctrines.[97]

Outside of bankruptcy, a federal court may enter an injunction to stay

---

[95]    *See* 28 U.S.C. § 1783.  *Cf. Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) (holding that the state law of preclusion must be followed even when federal jurisdiction over the subject matter of a claim is exclusive); *Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367, 385 (1996) (holding that a state court settlement may be given full faith and credit in federal courts, even if it concerns an exclusively federal area of law); *Migra v. Warren City School Dist. Bd. of Education*, 465 U.S. 75, 80 (1984) ("It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.").

[96]    *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507-09 (2001).

[97]    *See, e.g., Colorado River Water Conservation District v. United States*, 424 U.S. 800, 814-17 (1976).

25

proceedings in a state court only when an exception to the Anti-Injunction Act is met,[98] and should abstain from entering an injunction that affects ongoing or pending state court proceedings if they relate to important state judicial issues.[99] Within bankruptcy, the automatic stay – an express exception to the Anti-Injunction Act – operates as a permanent injunction staying state court proceedings within its scope.[100]   Section 1334 coordinates the efforts of state and federal courts by: (1) permitting district courts to abstain from hearing "particular proceeding[s] arising under title 11 or arising in or related to a case under title 11[]" in the interests of comity with state courts;[101] and (2) providing for the mandatory abstention of district courts, upon a timely motion, when a state court action related to but not arising under Title 11 "is commenced, and can be timely

---

[98]      *See* 28 U.S.C. § 2283 ("A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.").

[99]      *See Younger v. Harris*, 401 U.S. 37, 54 (1971).

[100]      *See In re Chateaugay Corp.*, 880 F.2d 1509, 1511 (2d Cir. 1989) (stating that "denial [of motion to lift the stay] is the functional equivalent of a permanent injunction"); *In re Sonnax Indus., Inc.*, 907 F.2d at 1285 ("The stay seems to us to be the equivalent of [a permanent] injunction [which] the district court retains the power to modify as circumstances dictate.").

[101]      28 U.S.C. § 1334(c)(1).

adjudicated, in a State forum of appropriate jurisdiction."[102]   However, these

abstention provisions do not "limit the applicability of the [automatic] stay[,]"

because the stay "applies to an action affecting the property of the estate in

bankruptcy[,]" over which district courts have exclusive jurisdiction.[103]

      The specific question here is whether the notice of appeal from the

Summary Judgment order divested the Bankruptcy Court of jurisdiction to lift the

stay, given that a state court might render a judgment on the issue of the ownership

of the funds.  From the foregoing discussion, it is apparent that the Bankruptcy

Court had jurisdiction to lift the stay.  Concurrent state and federal jurisdiction is

the norm, and specifically contemplated in the context of bankruptcy by Section

1334(c).  The notice of appeal stripped the bankruptcy court of jurisdiction to

amend the Summary Judgment order, including the holding that a decision on the

ownership of the funds was not necessary to fix and classify Appellants' claims.  It

did not strip the bankruptcy court of jurisdiction to permit a state court to

potentially rule on the issue of ownership of the funds.

---

[102]     *Id*. § 1334(c)(2).  *See also Certain Underwriters at Lloyd's, London v. ABB Lummus Global, Inc.*, No. 03 Civ. 7248, 2004 WL 224505, at *8 (S.D.N.Y. Feb. 5, 2004) ("[Section] 1334(c)(2) *requires* the court to abstain from hearing a non-core proceeding under certain circumstances. Section 1334(c)(1) *permits* abstention if the case is a core proceeding or a non-core proceeding that does not otherwise meet the criteria for mandatory abstention.") (emphasis in original).

[103]     *Id*. § 1334(d).  *See also id*. § 1334(e)(1).

This is perhaps easiest to see by imagining that the Summary Judgment order had been entered and appealed during the pendency of the state court action.  In this posture, the order would be granted preclusive effect in New York courts.[104]  However, the notice of appeal would not divest the state court of jurisdiction to hear the case.

In this case, the state court proceedings were enjoined by the stay. The notice of appeal deprived the bankruptcy court of jurisdiction to amend the order on appeal – the Summary Judgment order –, but that order related to issues collateral to the stay.[105]  If the bankruptcy court had lifted the stay, and the state court action proceeded and was resolved favorably to Appellants, it would have rendered their appeal of the Summary Judgment order moot.  But that is just a

---

[104]    *See Semtek Int'l Inc.*, 531 U.S. at 507-09.  *See also* New York Civil Practice Law and Rules ("N.Y. CPLR") § 5018 ("A transcript of the judgment of a court of the United States rendered or filed within the state may be filed in the office of the clerk of any county and upon such filing the clerk shall docket the judgment in the same manner and with the same effect as a judgment entered in the supreme court within the county."); N.Y. CPLR § 5402 ("The clerk shall treat the foreign judgment in the same manner as a judgment of the supreme court of this state. A judgment so filed has the same effect and is subject to the same procedures, defenses and proceedings for  reopening, vacating, or staying as a judgment of the supreme court of this state and may be enforced or satisfied in like manner.").

[105]    *Cf. Bradford-Scott Data Corp., Inc. v. Physician Computer Network, Inc.*, 128 F.3d 504, 506 (7th Cir. 1997) (holding that notice of appeal of District Court opinion denying arbitration stay divested District Court of jurisdiction to continue proceedings until the appeal was complete).

28

consequence of concurrent state and federal jurisdiction.  In sum, the bankruptcy court had jurisdiction to lift the stay.  I therefore must review the substantive grounds for the Bankruptcy Court's decision.

**B.    The Bankruptcy Court Correctly Held That Appellants' Claims Are Property of the Estate**

The central issue on appeal is whether the Bankruptcy Court erred in determining that the alter-ego claims were property of the estate.  The Appellants make three of arguments that the Bankruptcy Court so erred.  *First*, they argue that the Bankruptcy Court made an error of fact, because the State Court complaint did not allege general harm to the creditors, but rather direct harm to creditors.[106] *Second*, they argue that the Bankruptcy Court made a legal error when it read the allegations in the State Court complaint relating to the Missionary Sisters' domination and control of Cabrini as evidencing general harm, despite the fact that such allegations are necessary to plead an alter ego claim.[107]  *Third*, the Appellants

---

[106]    *See* Appellant Br. at 16 ("In this, the Bankruptcy Court got it backward: in fact, the Amended Complaint alleges a particularized, personal, direct harm to the Doctors and does not make any allegation of general harm to Cabrini or any of Cabrini's other creditors.") (emphasis removed).

[107]    *See id*. at 18 ("The Bankruptcy Court's serious factual error then led the Bankruptcy Court to make a reversible error of law. The Bankruptcy Court held that the . . . allegations of MSSH's 'domination and control' – are allegations of general injury to Cabrini and its creditors, even though the Amended Complaint does not allege any injury to Cabrini or to Cabrini's other creditors.").

argue that the Bankruptcy Court erred in refusing to lift the stay because (1) any

recovery on their claims would have benefitted the estate by setting off their

recovery under the plan of reorganization, and not harmed the estate because they

were not seeking damages from Cabrini; and (2) the general creditor class

benefitted from the Missionary Sisters' domination and control of Cabrini, because

Cabrini spent some of the money from their funds to pay pre-petition debt.[108]

      The Appellants' first two arguments demonstrate that they

misapprehend the basis for the Bankruptcy Court's holding, which  rests on the

following grounds: (1) as of the petition date, the Appellants' bankruptcy claims

were classified as general unsecured claims;[109] and (2) the facts alleged in the State

Court complaint show that the Missionary Sisters dominated and controlled

Cabrini to the detriment of *all* general unsecured creditors.[110]  The Bankruptcy

Court's legal determination that allegations of general harm give rise to a claim

---

[108]    *See id*. at 20-21.

[109]    Notably, this classification of the Appellants' claims could not be
modified by the Bankruptcy Court in its lift-stay opinion, because it formed part of
the basis for the order on appeal to Judge Kaplan.  As noted above, Judge Kaplan
has since affirmed the Bankruptcy Court's Summary Judgment order, holding that
the Appellants' claims were properly classified as general unsecured claims,
because, *inter alia*, the Appellants never had a property interest in the brokerage
accounts, but rather a contractual interest indexed to the amounts in the brokerage
accounts.

[110]    *See In re Cabrini Med. Ctr.*, 2012 WL 2254386, at *9.

that is property of the estate is correct.  Furthermore, its factual finding that the State Court complaint alleged only general harm to all unsecured creditors, as opposed to harm particular to the Appellants, is not clearly erroneous.  It is undisputed that the monies that the Missionary Sisters caused Cabrini to withdraw from the Funds were commingled with and deposited into the general operating account of Cabrini and then dissipated by Cabrini.[111]

It is irrelevant that the State Court complaint did not specifically allege that harm accrued to the general creditors of Cabrini.  What is relevant is that the kind of harm alleged by the State Court complaint was no different from the harm suffered by the unsecured creditors of Cabrini generally, *i.e.* that due to the diminution of Cabrini's assets by Missionary Sisters, they would not fully recover their claims.[112]  Because Missionary Sisters caused Cabrini to dissipate its

---

[111]     *See id*. at *8 ("[Appellants] do not contend that the [Missionary Sisters] directly converted the funds in the Merrill Lynch accounts; the allegations of the amended complaint make it clear that the funds were removed by Cabrini and used for Cabrini's own corporate purposes, not diverted to the treasury of [Missionary Sisters].").

[112]     *See, e.g. id*. at *8-9 ("It is alleged 'on information and belief' that 'the Missionary Sisters knew when Plaintiffs' funds were taken that Cabrini was in financial distress,' and it is claimed that at the same time the Missionary Sisters entered into 'financial transactions . . . to secure most of their own alleged loans to Cabrini.' But, again, the wrongdoing asserted against the Missionary Sisters is general direction and control and action to the detriment of all of Cabrini's creditors.") (quoting State Court Complaint ¶ 55).

assets, all general creditors were harmed.  Outside of bankruptcy, the race is to the

swift; inside of bankruptcy, an orderly distribution of the debtor's assets is the rule.

Prior to the bankruptcy petition, any creditor of Cabrini would have had standing

to assert a derivative claim against Cabrini, alleging substantially what the State

Court complaint alleged.[113]  Once the petition was filed, all such claims became

property of the estate.[114]

Likewise, the Appellants' third argument does not provide a basis for

reversing the Bankruptcy Court's holding.  *First*, their unsupported allegation that

the Missionary Sisters' domination and control of Cabrini *increased* the amount

available to the general unsecured creditor class is easily disproved.  Throughout

the adversary proceedings that ripened into the Settlement and Plan Injunction, the

Creditors' Committee alleged that, through its control of Cabrini, Missionary

Sisters *diminished* Cabrini's estate.[115]

*Second*, the Bankruptcy Court did not abuse its discretion by refusing

---

[113]    *See Shearson Lehman Hutton, Inc.*, 944 F.2d at 119 ("To resolve
whether the trustee has asserted claims that belong solely to HMK, we must
determine what claims HMK possessed against Shearson before HMK went
bankrupt.") (citing 15 Collier on Bankruptcy, ¶ 541.04 at 541-22 (15th ed. 1989)).

[114]    *See id*.

[115]    *See* Cred. Compl., Supp. Record No. 1, ¶¶ 26-92.  Indeed, it appears
that some of the factual allegations in the State Court Complaint were lifted from
the Creditors' Committee Complaint.  *See* Appellee Br. at 20.

to treat as dispositive the Appellants' stipulation that they were not seeking money damages from Cabrini. "'The purpose[] of the automatic stay[] [is] to preserve the assets of the debtor for the benefit of all creditors and [] protect the creditors from each other by stopping the race to seize the debtors assets . . . .'"[116]  As such, "[t]he debtor may neither unilaterally waive, nor limit, the scope of the automatic stay."[117]  Despite Cabrini's consent to be named as a nominal party, the Court could have reasonably concluded that lifting the stay would not serve the purposes of the stay. For example, had the Court issued a contrary ruling, Cabrini would need to bear litigation expenses, and would have no incentive to fully defend the suit. Furthermore, Cabrini consented to the lift-stay only to the extent that it was conditioned on keeping the Summary Judgment order in place.  As such, it likely would have been futile – yet costly – to lift the stay, because the Summary Judgment order put the Appellants' claims in the general unsecured class.  And strong prudential grounds counseled the Bankruptcy Court not to issue a lift-stay allowing the Appellants to seek redress in state court inconsistent with the

---

[116]     *Vesta Fire Ins. Corp. v. New Cap Reinsurance Corp., Ltd.*, 244 B.R. 209, 220 (S.D.N.Y. 2000) (quoting *In re Bird*, 229 B.R. 90, 94 (Bankr. S.D.N.Y. 1999)).

[117]     *Vasile v. Dean Witter Reynolds Inc.*, 20 F. Supp. 2d 465, 499 (E.D.N.Y. 1998) (citing *Ostano Commerzanstalt v. Telewide Sys., Inc.*, 790 F.2d 206, 207 (2d Cir. 1986)).

Summary Judgment order.  Thus, the Bankruptcy Court did not abuse its discretion in refusing to lift the stay.

### C.   The Bankruptcy Court Correctly Held that the Plan Injunction Presented an Independent Bar to Appellants' Claims

Given that the Appellants' claims were properly classified as property of the estate, it follows that they were settled, released, and barred by the Plan Injunction, which specifically bars estate claims.  This is precisely what the Bankruptcy Court held.[118]  The reasons given above for not crediting Cabrini's consent to be named as a nominal party in the context of lifting the stay apply with equal force to the Plan Injunction, given that plans of reorganization are for the benefit of debtor and creditors alike.[119]  Moreover, under 11 U.S.C. § 1127(b), a plan cannot be modified after it has been substantially consummated.[120]  The

---

[118]   *See In re Cabrini Med. Ctr.*, 2012 WL 2254386, at *9 ("However, the causes of action were not abandoned but were settled and released. . . . Pursuit of estate claims was specifically barred by the Plan Injunction.").

[119]   *See Adelphia Recovery Trust v. Bank of America, N.A.*, 390 B.R. 80, 88 (S.D.N.Y. 2008) ("Under the Bankruptcy Code, a confirmed plan of reorganization acts like a contract that is binding on all of the parties, debtor and creditors alike.") (quotation marks and citations omitted).

[120]   *See* 11 U.S.C. § 1127(b) ("The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title. Such plan as modified under this subsection becomes the plan only if circumstances warrant such modification and the court, after notice and a hearing,

parties do not dispute that the Plan here has been substantially consummated, but the Appellants argue that the Bankruptcy Court should nevertheless have lifted the Plan Injunction, for the same reasons they assert that the Bankruptcy Court should have lifted the stay.  These reasons were rejected above, and there is no reason to revisit them here.  Thus, the Bankruptcy Court did not abuse its discretion in holding that the Plan Injunction independently barred the Appellants' claims.

### D. The Bankruptcy Court Was Not Required to Make Explicit Reference to the *Sonnax* Factors

Finally, Appellants contend that the Bankruptcy Court's failure to explicitly reference the *Sonnax* factors constitutes reversible error.[121]  As an initial observation, the *Sonnax* factors are meant to aid the court in determining whether to lift the stay.  Nowhere in *Sonnax* is there a rule that a judge must slavishly list each *Sonnax* factor in conducting her review.[122]  Moreover, it is evident from the

---

confirms such plan as modified, under section 1129 of this title.").  *Accord In re Indu Craft Inc.*, Nos. 11 Civ. 5996, 11 Civ. 6303, 11 Civ. 6304, 2012 WL 3070387, at *9 (S.D.N.Y. Jul. 27, 2012) ("By its terms, therefore, the statute does not allow for modification of a plan after it has been substantially consummated") (quotation marks omitted).  "Substantially consummated" is defined in 11 U.S.C. § 1102(2).

[121]    *See* Reply Br. at 8 ("The Bankruptcy Court failed to even analyze the Sonnax factors for lifting the automatic stay, and did not give any reason for its failure to do so. That is a serious and reversible error by the Bankruptcy Court.").

[122]    *See In re Burger Boys, Inc.*, 183 B.R. 682, 688 (S.D.N.Y. 1994) ("*Sonnax* did not expressly require specific consideration of the *Curtis* factors nor

record that the Bankruptcy Court did consider – and correctly weigh – the relevant *Sonnax* factors, though not by name.  The Court determined that: (1) the causes of action were connected to the bankruptcy case, and did not primarily involve third parties (factors two and six);[123] (2) the parties were not ready for trial in state court (factor eleven);[124] and (3) it would be in the interests of judicial economy not to permit a state court proceeding to run parallel to the summary judgment appeal (factor ten).[125]  As such, it was not an abuse of discretion not to explicitly reference the *Sonnax* factors.

## VI.   CONCLUSION

For the foregoing reasons, the order of the Bankruptcy Court is affirmed.  The Clerk of the Court is directed to close this case.

---

did it consider each one.").

[123]     *See In re Cabrini Med. Ctr.*, 2012 WL 2254386, at *9.

[124]     *See id.* at *5.

[125]     *See id.* at *10.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            December 20, 2012

**-Appearances-**

**For Appellants:**

Katherine B. Harrison, Esq.
Paduano & Weintraub, LLP
1251 Avenue of the Americas, Ninth Floor
New York, NY 10020
(212) 785-9100

**For Appellees:**

Sean C. Southard, Esq.
Klestadt & Winters, LLP
570 Seventh Avenue, 17th Floor
New York, NY 10018
(212) 972-3000

Frank Oswald, Esq.
Togut, Segal, & Segal, LLP
One Penn Plaza, Suite 3335
New York, NY 10119
(212) 594-5000